KNAPKE, Respondent, v. GRAIN DEALERS MUTUAL INSURANCE COMPANY, Appellant.

*No. 67. Argued March 27, 1972.—Decided May 2, 1972.*
(Also reported in 196 N. W. 2d 737.)

For the appellant there was a brief by *Arnold, Murray & O'Neill*, attorneys, and *James P. O'Neill* of counsel, all of Milwaukee, and oral argument by *James P. O'Neill*.

For the respondent there was a brief by *Kersten & McKinnon*, attorneys, and *George P. Kersten* of counsel, all of Milwaukee, and oral argument by *George P. Kersten*.

CONNOR T. HANSEN, J. The following issues are dispositive of this appeal:

(1) Did the trial court err in receiving testimony on the issue of waiver?

(2) Is there sufficient credible evidence to support the findings of the trial court?

*Waiver.*

The complaint alleged that the policy of insurance was in full force and effect at the time of the accident and that under the policy the defendant agreed to insure the plaintiff against liability for bodily injury sustained by others in or on the barn structure.[1]

The answer denied liability and alleged as affirmative defenses the following policy exclusions relating to coverage:

" 'Coverage A—Dwelling.

" 'This policy covers: (a) the building described including additions in contact therewith, occupied principally for dwelling purposes; . . .'

" 'Coverage B—Appurtenant private structures.

" 'This policy covers private structures appertaining to the premises and located thereon, including materials

---

[1] The policy was issued for a term of three years, commencing February 15, 1963. Lingle's accident occurred on April 11, 1965.

and supplies located on the premises or adjacent thereto, intended for use in construction, alteration or repair of such structures. This coverage does not include: (a) any structure used in whole or in part for commercial, manufacturing or farming purposes; or (b) any structures (except structures used principally for private garage purposes) which are wholly rented or leased to other than a tenant of the described dwelling.' "

" 'Additional premises endorsement.

" '2. The insurance does not apply:

" '(a) while business pursuits are conducted at such premises with the knowledge of the Insured who owns or rents such premises unless such pursuits are specifically declared in this endorsement or consist of office, school or studio occupancy by a person other than an Insured; . . .' "

At the outset of the trial, the court stated it would be interested in defense counsel's statement or argument as to whether the plaintiff could go beyond the allegations of the complaint and raise the issue of estoppel or negligence. Plaintiff's counsel responded that the only issue was whether plaintiff could introduce testimony of waiver and indicated this issue had previously been discussed with defense counsel. Plaintiff's counsel then revealed their position to be that the insurance agency was the agent of the defendant and had knowledge of the activity in the barn at the time the policy was issued. Cases were cited by plaintiff's counsel in support of the proposition that waiver need not be specifically pleaded. Defense counsel made no statement or argument in opposition and the court allowed the plaintiff to proceed.

Plaintiff testified that Lingle's accident happened on a Sunday while he was fixing a broken window; that no business activity was taking place on that day; and, that there was never business activity in the barn, except for the storage of some old equipment by two companies, one being a family corporation of which the plaintiff was an officer. Plaintiff further testified that previous-

ly he had over 20 insurance policies with numerous companies covering his various property interests and that the policy in question was purchased from Schley Baldwin Insurance agency in an effort to consolidate all of these interests under one policy. Plaintiff further testified that the agency had been doing his tax and accounting work for a number of years previous to the issuance of the insurance policy. In this connection, plaintiff would present the various items of income he received from his properties to an employee of the agency.

Norman Schley, a stockholder in the Schley Baldwin agency, was called adversely by the plaintiff. He testified that he personally sold the policy to the plaintiff and that the policy represented an attempt to duplicate the coverage the plaintiff previously had on his various property interests. He did not, however, inspect any of the premises. He further testified that the agency had been doing tax and accounting work for the plaintiff for over ten years.

Victor Young, an employee of the insurance agency, was also called adversely by the plaintiff. He testified he was responsible for the active preparation of the policy and did most of the detail work in regard thereto. He had also prepared plaintiff's tax returns in September or October of 1962, for the fiscal year ending July 31, 1962. It appears that the Schley Baldwin Insurance agency and the Norman E. Schley accounting firm were both housed in the same building although the records for each office were kept separate. Young was employed by both companies. He testified it was his intention in writing the insurance policy in question to cover the barn owned by the plaintiff. Plaintiff then introduced into evidence portions of a deposition taken of Young on April 23, 1970. In the deposition, Young testified that it was his intention to provide coverage for any liability the plaintiff might incur by virtue of his owner-

ship of the barn. He also stated that while he was preparing the data for the insurance policy he was aware that plaintiff was receiving storage income for the barn. Two exhibits utilized by Young in preparing plaintiff's tax return made reference to the barn and the income plaintiff received therefrom. On cross-examination, Young testified that he had prepared over 100 tax returns in 1962; that he had utilized the exhibits in September or October of 1962, whereas he gathered the information for the insurance policy in January or February of 1963; and that he could not recall the plaintiff specifically mentioning who it was that paid for storage in the barn.

No evidence was presented by the defendant.

The trial court found that the Schley Baldwin Insurance agency was the agent of the defendant; that its intent in issuing the policy was to provide coverage for the barn; and, that the agent knew and was aware of the use of the barn at the time the policy was issued. The court concluded that any exclusion contained in the policy was expressly waived by the defendant through its agent and ordered judgment in the amount of $15,067.04, with interest, costs and disbursements.

This court has held that waiver need not be specifically pleaded. This is especially true where the doctrine of waiver is invoked to controvert an affirmative defense since sec. 263.20, Stats., does not permit a reply to an answer where a counterclaim is not alleged and, under sec. 263.26 new matter raised in an answer is deemed controverted. *D'Angelo v. Cornell Paperboard Products Co.* (1967), 33 Wis. 2d 218, 147 N. W. 2d 321. On the other hand, this court has held that estoppel, or evidence thereof, must be specifically pleaded, either in the original complaint or in an amended complaint, in order for such evidence to be properly admissible at trial. *Schneck v. Mutual Service Casualty Ins. Co.* (1963), 18 Wis. 2d 566, 119 N. W. 2d 342.

A distinction between the necessity for pleading waiver and estoppel is grounded on the difference between the two concepts. In *Von Uhl v. Trempealeau County Mut. Ins. Co.* (1966), 33 Wis. 2d 32, 37, 146 N. W. 2d 516, it was stated:

> "The terms 'waiver' and 'estoppel' are often not distinguished and used interchangeably. 'Waiver' is the voluntary and intentional relinquishment of a known right; intent to relinquish the right is an essential element of waiver. 'Estoppel,' on the other hand, consists of the action or nonaction of one party which induces reliance thereon by another, either in the form of action or nonaction, to his detriment. . . ."

*See also: Ryder v. State Farm Mut. Automobile Ins. Co.* (1971), 51 Wis. 2d 318, 323, 187 N. W. 2d 176; *Hanz Trucking, Inc. v. Harris Brothers Co.* (1965), 29 Wis. 2d 254, 264–267, 138 N. W. 2d 238. In 16A Appleman, *Insurance Law and Practice,* pp. 281, 282, sec. 9081, the terms are distinguished as follows:

> "Waiver arises by the act of one party; estoppel by operation of law. Waiver depends upon knowledge of the insurer; estoppel upon a prejudicial change of position by the insured. While they may coexist, they are not identical in connotation. The term estoppel is broader than that of waiver, and may embrace it within its scope, in certain instances, since an insurer, after waiving certain rights, would be estopped thereafter to insist upon them. The converse is not true, as an estoppel need not be founded upon a waiver."

Thus, an insurer could be charged with knowledge of the facts and circumstances surrounding an alleged waiver of an affirmative defense whereas it could not be charged with the same knowledge of an insured's claim of estoppel. However, it is unnecessary to posit any such distinction in order to dispose of the issue presented on this appeal.

The function of pleadings is notification as well as creation of the issue(s) to be tried. *Schneck v. Mutual Service Casualty Ins. Co., supra,* page 572; *D'Angelo v. Cornell Paperboard Products Co., supra,* page 230. Defendant claims both surprise and prejudice at trial since the issue of waiver was not alleged in the complaint. At the outset of the trial, however, plaintiff's counsel expressly informed both the trial court and defense counsel of his intention to show that the defendant had waived the policy exclusion alleged in the affirmative defense. Authority was cited for the proposition that waiver need not be specifically pleaded in order to present evidence thereon. Defense counsel remained silent in response to an invitation by the trial court to state his position and present arguments on this matter. No objection was made until plaintiff attempted to elicit testimony which was relevant to the issue. Under such circumstances, defendant cannot now be heard to object to the failure of plaintiff to plead the issue of waiver. If the defendant was prejudicially surprised, he had ample opportunity to seek a continuance or an adjournment prior to the presentation of testimony. *Trilling v. Nippersink Management Corp.,* ante, p. 406, 195 N. W. 2d 833.

*Gray v. Rural Casualty Ins. Co.* (1970), 47 Wis. 2d 663, 177 N. W. 2d 817, relied upon by the defendant, involved the denial of a motion for summary judgment where the trial court erroneously considered an issue raised by plaintiff's affidavit in opposition to the motion not raised in the complaint. The case is inapplicable to the situation presented in the instant case.

*Sufficiency of the evidence.*

Defendant contends that the finding of the trial court that the agency had knowledge of the use of the plaintiff's barn at the time it issued the policy is not supported by

any credible evidence. It is argued that plaintiff did not specifically advise the agency that the barn was in fact being utilized for storage by three or more tenants in common and that the knowledge acquired by Young in preparing plaintiff's tax returns was coincidental and insufficient to charge the agency with such knowledge. The record reveals testimony by Young, however, that the intent in issuing the policy was to provide coverage for any liability arising out of plaintiff's ownership of the barn-type structure. Young further testified he was aware at the time the policy was issued that plaintiff was receiving storage income from the barn although he could not recall plaintiff specifically mentioning the name of one of the companies. The finding of the trial court that the agent knew and was aware of the use of plaintiff's barn and that part of the barn was leased for storage purposes is not against the great weight and clear preponderance of the evidence and must be sustained. *Resseguie v. American Mut. Liability Ins. Co.* (1971), 51 Wis. 2d 92, 100, 101, 186 N. W. 2d 236; *Trible v. Tower Ins. Co.* (1969), 43 Wis. 2d 172, 180, 168 N. W. 2d 148. Such a finding is sufficient to support the decision of the trial court that any exclusion contained in the additional premises endorsement was waived by the defendant. *Schultz v. Caledonian Ins. Co. of Edinburgh, Scotland* (1896), 94 Wis. 42, 68 N. W. 414.

*New trial in interest of justice.*

It is well settled that this court will not exercise its discretion under sec. 251.09, Stats., to order a new trial in the interest of justice unless it appears to the court, from the record, that the real controversy has not been fully tried or unless this court has been convinced that there was a probable miscarriage of justice, viewing the case as a whole. Our review of the record in this case

does not impress us that there is a reasonable probability that justice has miscarried.

We believe that the issues of the case have been fully and fairly tried and determined, and that the findings of the trial court are amply supported by the evidence. *Schrank v. Allstate Ins. Co.* (1971), 50 Wis. 2d 247, 184 N. W. 2d 127.

*By the Court.*—Judgment affirmed.